# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DERECK MCKINNIE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**HUDSON COUNTY PROSECUTOR OFFICE et al.,**<br><br>**Defendants.** | Civ. No. 13-7290 (KM)(MAH)<br><br>**OPINION** |

This civil rights complaint, filed by Dereck McKinnie, *pro se,* arises primarily, but not exclusively, from a family dispute over real property in Jersey City. The real property is indisputably titled to McKinnie's mother, Rethie McKinnie, and her son, Bryan. (The complaint attaches a copy of the deed.) Dereck McKinnie seems to be alleging that because the Appellate Division vacated a restraining order barring him from the property, and from contact with his mother, he is entitled to occupancy or even ownership. He has frequently complained to the police, local prosecutors, and the courts, about his mother's continued refusal to admit him to the house, and apparently has been told that, as owner of the property, she has the right to exclude him. Ownership of the property has apparently been the subject of a state court lawsuit, and other actions have been filed, although their outcome is for the most part unrevealed. This action is filed against the police, the courts, and McKinnie's lawyer.

I have already filed one order and opinion (ECF nos. 29, 30) dismissing the complaint in its original form. Now before the court are two motions to dismiss the Amended Complaint ("AC", ECF no. 31). They are:

(a) Motion to dismiss plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed on behalf of defendants Hudson County Prosecutor's Office, Erika Patterson, Michelle Field, Michelle Vicari, Priscila Pender, Miguel Torres, and Hudson Vicinage of the State of New Jersey Judiciary (the "Hudson Defendants") (ECF no. 33).

(b) Motion of defendant Gerald D. Miller, Esq., pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), to dismiss the Amended Complaint for lack of jurisdiction and failure to state a claim (ECF no. 34).

The motions are technically unopposed, but I have thoroughly examined the case file, in which McKinnie lays out his contentions at length. For the reasons stated herein, the motions will be granted.

**Background**

The Amended Complaint cites extensively to 100 pages of exhibits (ECF no. 1-1) that were attached to the original complaint. The plaintiff obviously intends to rely on them, and I have reviewed them in order to get a sense of the allegations. For context, I include in this summary allegations against persons who are not currently movants, such as the police officers.

### 1. The 2009 restraining order and reversal

Attached to McKinnie's complaint in this action is a copy of a decision of the Superior Court of New Jersey, Appellate Division in *R.M. v. D.M.*, No. A-5656-07T3. (09-cv-3293, ECF no. 6; the case may also be found at 2009 WL 4981203 (Dec. 24, 2009).) In that case, the Appellate Division reverses a restraining order that, *inter alia*, barred D.M. from contacting R.M. (his mother) and other family members, and barred him from R.M.'s residence and place of employment.[1]

---

[1] I am sensitive to the anonymization in the Appellate Division's decision, but Mr. McKinnie has attached it in support of his claims, and it is very clear that McKinnie acknowledges that "D.M." is himself. The reversal of the restraining order is the

2

That state court action, brought in Family Court, grew out of D.M.'s distress at finding that R.M. and her son Byron had put a Jersey City house up for sale. The deed to the property was in the name of R.M. and Byron. On May 10, 2008, D.M. went to the property, where he saw a "For Sale" sign and encountered a realtor named Delacent Womack, who was conducting an open house. D.M. objected that he was the true owner, having bought the house with money he received after breaking his leg. D.M. told his mother that he did not buy the house for her just so she could sell it. He was carrying a knife in a case, and made a threatening remark to the realtor about "witnessing a murder." The police were summoned. The Appellate Court upheld the trial court's fact finding, but ruled that a single threatening statement to the realtor did not constitute a course of domestic violence to a family member. (ECF no. 6)

This decision is foundational to McKinnie's claims. He evidently interprets the lifting of this restraining order as a declaration that he is entitled to occupancy, or even ownership, of his mother's house in Jersey City. *See infra.*

### 2.  2009 Action

In July of 2009, McKinnie filed a complaint (the "2009 Action") in this court. *McKinnie v. Amodeo & Miller, et al.*, No. 09-cv-3293. It involved many of the same matters referred to, however elliptically, here. The complaint in the 2009 Action (No. 09-cv-3293, ECF no. 1) alleges that McKinnie was hit by a car in August 1985, and used the settlement money to purchase a property at 269 Bergen Avenue in Jersey City. Amodeo and Miller[2] were his attorneys. They allegedly told McKinnie that "he was an undisclose[d] owner" of the property. McKinnie states that he paid for renovations to the house, including an extension of the garage in 1994–95, an extension of the house in 1997, and a

---

foundation of his claims against court personnel, and also seems to lie behind his contentions that he was entitled to occupancy or ownership of the Jersey City house.

[2]  Apparently a different Miller from Gerald Miller, an attorney who is sued in this action.

3

basement floor in 1998. In the 2009 Action, McKinnie sued Amodeo & Miller. He also sued Byron K. McKinnie and Rethel McKinnie, saying that "neither gave Attorneys or Dereck McKinnie any money to purchase" the Jersey City property. (There is also an allegation of "welfare fraud.") Against other defendants, Weyer Haeuser Mortgage and Weichert Mortgage, the 2009 Complaint made no specific allegations, but seemed to seek discovery. Various state law causes of action were asserted.

By order filed August 4, 2009, Judge Cavanaugh denied *in forma pauperis* status and, on review, dismissed the complaint without prejudice for lack of federal jurisdiction. Although the case was closed, McKinnie nevertheless continued to make various filings.

On August 9, 2013, McKinnie moved to amend or reopen the 2009 case. By order dated October 23, 2013, Judge Cavanaugh denied that motion.

### 3. Hudson County Action

Although this is not alleged clearly in the complaint, it appears that McKinnie sued Byron and Rethel McKinnie in Superior Court, Hudson County, No. HUD-C-128-12, over ownership of the property. *See* ECF no. 1-1 at 40–55 (various papers, apparently from that action). It appears that he was represented by Gerald Miller, Esq., and that the defendants were represented by Victor Sison, Esq.. The outcome is not stated; an online search confirms the existence of the case, but gives no disposition and states only that the case has been archived. http://njcourts.judiciary.state.nj.us (Civil Case Public Access).

### 4. Original Complaint in this Action

On November 22, 2013, Mr. McKinnie filed the original complaint in this matter. (ECF no. 1) At first, it was not served. The action was reassigned to me on April 21, 2014. (ECF no. 5) On May 27, 2014, I granted the plaintiff's application to proceed *in forma pauperis*.

The original complaint consisted of little else but lists of persons and titles of causes of action. (Exhibits were attached, *see* ECF no. 1-1, but without further guidance the court was unable to extract a clear cause of action from

them.) On April 6, 2015, I entered an order and opinion dismissing the original complaint for failure to state a claim. (ECF nos. 29, 30) That dismissal, based on the pleading standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), was without prejudice. My order noted problems with service, cited the standards of Rule 8(a), suggested to plaintiff how he might remedy the deficiencies in the complaint, and directed him to the court's web site for pro se litigants. I granted leave to file an Amended Complaint within 45 days.

### 4. Amended Complaint in this Action

On May 20, 2015, Mr. McKinnie did file an Amended Complaint. (ECF no. 31, cited as "AC"). Much of the Amended Complaint appears to revolve around McKinnie's 2008 dispute with his relatives regarding the sale of the property that was the subject of the 2009 Complaint. The deed, attached to McKinnie's complaint, is in the name of Byron K. McKinnie and Rethel McKinnie. (ECF no. 1-1 at 17) It is not revealed whether the property was ever actually sold. As I have said, the Amended Complaint relies on, and cites extensively to, the exhibits (ECF no. 1-1) attached to the original complaint.

#### *Police*

Many of the complaint's allegations relate to police officers, who are not movants here, but I summarize those allegations as background.

The complaint alleges that Police Officer Evan, apparently joined by Police Officer Green, confronted him at 269 Bergen Avenue. Evan spoke to Rethel McKinnie, restrained McKinnie, and told him he could not enter the house. McKinnie told the officer he had had a heart attack and that his leg hurt. The officers gave McKinnie a ride to 181 Pearsall Avenue in Jersey City (apparently his home at the time) and let him go. (AC pp. 5–7) This may have occurred in January 2010. (*See* ECF no. 1-1 at 19.)

McKinnie complained to Sgt. Sarno about the incident. Sgt. Sarno allegedly did not "enforce the court order" or otherwise do his job correctly. (AC at pp. 9–10)

McKinnie complained to Sgt. Rolando, who allegedly said that Rethel and Byron McKinnie did not have to let him into the house, because the house is in

5

their name. (AC at pp. 13–14) Det. Jackson met with Rolando, and also told McKinnie to fill out the citizen complaint form that Rolando brought out. (AC at 15–16)

Officer Butler did not enter McKinnie's complaints about three stolen vehicles into the New Jersey DMV computer. It seems that he did check the garage at 269 Bergen Avenue to see if the cars were there. The complaint also refers to police reports. (AC at pp. 11–12)

Attached to the original complaint are copies of titles for three automobiles: a 1977 Mercedes Benz, a 1985 Mercedes Benz, and a 1985 Chevrolet. (ECF no. 1-1 at 76–78) Attached Jersey City police reports and handwritten notes state that McKinnie said he last saw these 30-year-old cars in 2010. The alleged thieves are not identified. (ECF no. 1-1 at 72–75, 79–82) Municipal court documents, relating to claims and cross-claims by McKinnie and his family members, possibly regarding the cars, are also attached. (ECF no. 1-1 at 83–90) A civilian complaint form, filed with the police on October 19, 2012, complains that they are not enforcing the law and have not put the vehicle on the "DMV theft sheet." A handwritten note giving more details is attached. (ECF no. 1-1 at 97) A letter from Det. William Jackson, dated January 17, 2013, states that the complaint is being investigated and requests an interview. (ECF no. 1-1 at 100)

**Court Personnel**

Two persons employed by the court system, Michelle Field and Miguel Torres, were involved in giving McKinnie a copy of the restraining order signed by Judge Joseph Charles Jr. in January 2008. (AC at pp. 25–27) Two other persons in the Superior Court, Priscilla Pender and Michelle Vicro, told McKinnie the case had gone to the Appellate Division and that they did not have it any more, or did not have "paperwork" for him. These events occurred in November–December 2009. McKinnie complains that they illegally furnished or referred to the restraining order, which was on appeal, and then reversed. He faults them for not "checking" with the Appellate Division. (AC at p. 28–32)

McKinnie's complaint, again, may be that he believes that the Appellate Division reversal of the restraining order entitled him to reentry to the house or established his ownership to the property (which is actually deeded to his mother). He seems to have sought to file a motion for such relief in the local criminal court on December 30, 2009. (*See* ECF no. 1-1 at 28) He also seems to have filed an emergent motion in the Appellate Division seeking to "re-enter my rightful home" (ECF no. 1-1 at 37), which was denied (ECF no. 1-1 at 39).

### *HCPO/Prosecutors*

The complaint alleges that several prosecutors appeared in Jersey City Municipal Court in connection with McKinnie's allegations that three of his cars were stolen. He names them as Linda Ariston, Joe Taalabaus, and Steven Hummell (not movants here). The nature of such appearances is not stated. The complaint seems to be that they allegedly failed to bring charges stemming from "violation of court order" or against the person, apparently unknown, who stole his cars. (AC at pp. 17–24)

There is also a civilian complaint form filed with the Hudson County Prosecutor's Office on November 15, 2012, for "violation of court order." (ECF no. 1-1 at 92) This, too, may stem from McKinnie's belief that the Appellate Division ordered him restored to ownership or occupancy of the Jersey City house. Handwritten notes indicate that he was sent to Special Civil Part, but that no landlord-tenant case was found to be pending. (ECF no. 1-1 at 94)

A letter from Sgt. Erika Patterson, dated January 15, 2013, is apparently a follow-up to the civilian complaint. It is signed in her capacity as an investigator in the Internal Affairs Unit of the HCPO (she is not, as alleged in the complaint, a prosecutor). The letter states that the Prosecutor's office does not investigate civil matters arising from violation of court orders or appeals, but states that complaints about members of the Police Department have been forwarded to Captain Siranides for review. (ECF no. 1-1 at 95) That seems to be the foundation of the allegations against her.

### *Attorneys*

The most detailed allegations are against Gerald Miller, Esq., an attorney. The complaint alleges that Miller advised McKinnie that he was an "undisclosed owner" of the house at 269 Bergen Avenue. Miller allegedly stated that he could get McKinnie's house back, or if not, could at least recover amounts expended for work on the house, if McKinnie provided receipts or other proof showing the work he had done. (AC at p.33)

According to the complaint, Miller took the case to federal court (an apparent reference to the 2009 Action). The reference may be instead, or in addition, to the Hudson County action. (*See* p. 4, *supra*.) Miller allegedly failed to employ "any Discovery, Evidence, Person or say anything about" that case (although the complaint attaches exhibits consisting of discovery requests and responses in the state case). Miller allegedly presented McKinnie with a release form and told him he would receive $20,000, but McKinnie never signed it. (Among the exhibits there is an unsigned, undated settlement and release of the claims in the Hudson County action that fits that description. (ECF no. 1-1 at 41)) As for McKinnie's stolen vehicles, property and court order, Miller allegedly stated that "we will worry about that later." (AC at pp. 33–34)

Victor Sison, Esq., is alleged to have given false information in court and in court documents. (AC at p. 35) Sison seems to have been the attorney for Byron and Rethel McKinnie in the Hudson County action. (ECF no. 1-1 at 59)

The causes of action listed as to all defendants are (1) violations of due process and equal protection; (2) 42 U.S.C. § 1983; (3) disability discrimination; (4) breach of trust; (5) duty; and (6) negligence. The complaint claims lost personal property including three motor vehicles, damage to the 269 Bergen Avenue property, and wear and tear on McKinnie's 2006 Dodge Magnum for, inter alia, traveling back and forth to court. It claims compensatory and punitive damages, as well as fees and costs.

**Standard on Motion to Dismiss**

The defendants move to dismiss the Amended Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Lack of subject matter jurisdiction may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. A factual attack may involve the court's receipt of evidence.

The defendants also move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011).

At a minimum, a complaint must contain

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief

FED. R. CIV. P. 8(a).

From the seminal modern cases of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Third Circuit has extracted a three-step process for reviewing a complaint:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal*, 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The complaint's allegations must be factual, not conclusory, and they must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

**Discussion**

**A.   Motion of the Hudson Defendants**

The Hudson Defendants, who fall into two categories, identify themselves as follows:

First are the Prosecutor's Office defendants, *i.e.*, the Hudson County Prosecutor's Office (HCPO), the three individual prosecutors, and Lt. Erika Patterson of the HCPO (who is not a prosecutor, but an investigator in the Internal Affairs Unit). McKinnie sues them for failing to properly investigate or charge anyone in connection with his three stolen vehicles or "violation of court order." Second are the Court Defendants, *i.e.*, the New Jersey Superior Court, Hudson County vicinage, and its employees, Michelle Field, Michelle Vicari, Priscila Pender, and Miguel Torres. They are charged with some sort of inaction with respect to the restraining order.

### 1. Eleventh Amendment

The Eleventh Amendment poses an initial jurisdictional bar to suit. The Eleventh Amendment incorporates a general principle of sovereign immunity which bars citizens from bringing suits for damages against any state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984); *Kelley v. Edison Twp.*, No. 03-4817, 2006 WL 1084217, at *6 (D.N.J. Apr. 25, 2006) (citing *Bennett v. City of Atl. City*, 288 F. Supp. 2d 675, 679 (D.N.J. 2003)); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Hans v. Louisiana*, 134 U.S. 1 (1890).

It is well settled that the Superior Court, and its employees acting in their official capacities, partake of the State's Eleventh Amendment immunity to suit. *See Robinson v. New Jersey Mercer County Vicinage-Family Div.*, 514 Fed. App'x 146, 149 (3d Cir. 2013)(New Jersey county court was "clearly a part of the state of New Jersey," so "both the court itself and its employees in their official capacities were unconsenting state entities entitled to immunity under the Eleventh Amendment") (citing *Benn v. First Judicial Dist. Of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005)); *Dongon v. Banar*, 363 Fed. App'x 153, 155 (3d Cir. 2010) (citing *Johnson v. State of N.J.*, 869 F. Supp. 289, 296-98 (D.N.J. 1994)). The same is true of the County Prosecutors' office and its employees when they are engaged in the investigation and prosecution of cases. *Beightler v. Office of Essex Cty. Prosecutor*, 342 F. App'x 829, 832 (3d Cir. 2009) (citing *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir.1996)); *In re Camden Police Cases*, No. CIV. 10-4757 RBK/JS, 2011 WL 3651318, at *3 (D.N.J. Aug. 18, 2011).

That potentially leaves claims against individual defendants for non-official acts, or claims against them in their individual capacities. As to these, there are multiple other barriers to this action.

### 2. Statute of Limitations- Court Defendants

The claims against the Court Defendants—Field, Torres, Pender, and Vicari—are barred by the statute of limitations. Whether these are viewed as

constitutional claims under 42 U.S.C § 1983 or as state tort claims, the statute of limitations is the same: two years. Section 1983 claims are subject to New Jersey's two-year personal injury tort statute of limitations. N.J. Stat. Ann. § 2A:14-2(a). *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (per curiam) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). Although the statute of limitations is an affirmative defense, a dismissal is permissible where the action's untimeliness is clear, based on the complaint and items properly considered on a motion to dismiss.

The claims against the Court Defendants all relate to the 2008 altercation at the Jersey City house and the resulting restraining order. That restraining order is alleged to have been entered in January 2009 and vacated by the Appellate Division's decision on December 24, 2009. All of the allegations against these defendants date from their interactions with McKinnie from November 2008 through December 2009.

This action was filed on November 22, 2013, nearly three years after the last fact pled against these Court Defendants. The claims against Field, Torres, Pender, and Vicari are barred by the two-year statute of limitations.

### 3. *Failure to state a claim/Qualified immunity*

The Court Defendants and Patterson cite qualified immunity, but in a manner that renders their motion equivalent to an ordinary Rule 12(b)(6) motion to dismiss. I agree that the complaint fails to state a cognizable claim against them.

"[Q]ualified immunity shields government officials from civil liability as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It requires a two-step analysis: the first step asks whether "the official's conduct violated a constitutional right" at all. *McGreevy*, 413 F.3d at 364 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second requires an analysis of whether "the right that the defendant's

conduct allegedly violates was a clearly established one, about which a reasonable person would have known." *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000). Because the second step is somewhat fact-bound, it will often be unsuitable for disposition on a motion to dismiss. The first step, however, may be considered on a Rule 12(b)(6) motion, where the question is simply whether, as a matter of law, a constitutional violation has been alleged. Here, I confine myself to that first step. As a result, the inquiry is functionally equivalent to a Rule 12(b)(6) motion, and I evaluate the complaint by that standard.

The complaint alleges that Vicari, Pender, Torres, and Field, employees of the Superior Court, Hudson County, furnished him a copy of the restraining order, stated that because the matter was on appeal they had no current involvement or "paperwork" for McKinnie, and the like.[3] McKinnie's frustration is palpable, but his cause of action is not.

The cause of action most consonant with these allegations might be a due process claim based on obstruction of access to the courts. *See generally Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir.2008) (per curiam) *(citing Lewis v. Casey*, 518 U.S. 343, 354–55, 116 S. Ct. 2174 (1996)). Such a claim requires identification of an "arguable," "nonfrivolous" underlying cause of action, either anticipated or lost, and show that the defendant frustrated the plaintiff's efforts to present that claim. *Id.* at 351–53; *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S. Ct. 2179 (2002). This complaint does not plead any such facts. The sense seems to have been that these employees of the Superior Court, Hudson County, should not have furnished McKinnie with a copy of the restraining order, which he regarded as illegal, or should have contacted the Appellate Division at his urging within days after that order was vacated. Nothing in these allegations indicates that these employees did anything but their job, or that anything they told him (for example, that the Appellate Division currently

---

[3] I reiterate that these allegations, dating from 2009, are barred by the statute of limitations. Their failure to state a claim is an alternative grounds for dismissal.

13

had the file, and that they did not) was incorrect. Certainly there is no indication that they frustrated the presentation of any claim.

Lt. Patterson, who works for the prosecutor's office as an investigator in the Internal Affairs Unit, is misidentified as a prosecutor. The complaint alleges that she was informed about the stolen cars and "violation of court order" but failed to charge anyone criminally (which does not seem to have been her job, but let that pass).

It appears from the exhibits that Patterson's sole involvement is writing the January 15, 2013, letter. (ECF no. 1-1 at 95) That letter, responding to McKinnie's complaint by stating that the Office does not investigate civil matters such as "violation of a court order," but that complaints about members of the Police Department have been forwarded to Captain Siranides for review. (ECF no. 1-1 at 95) No wrongdoing of any kind is apparent from Patterson's letter or the vague allegations against her. As against her, the complaint is dismissed for failure to state a claim.

4.   *Notice under NJ Tort Claims Act*

To the extent that the complaint alleges state-law torts, it also fails because McKinnie has not pled that he filed a notice pursuant to the New Jersey Tort Claims Act (NJTCA). This is an alternative ground for dismissal of the claims, which are dismissed on the grounds stated above. I state it for plaintiff's guidance as to any claims that might survive. As to them, I will permit McKinnie to allege and prove filing of a NJTCA notice, if it exists.

Under the NJTCA, "[n]o action shall be brought against a public entity or public employee under [the NJTCA] unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J. Stat. Ann. § 59:8-3. That "procedure" requires that a notice of claim be filed with the public entity, generally within 90 days after the accrual of the cause of action. N.J. Stat. Ann. § 59:8-8. *See Velez v. City of Jersey City,*

14

180 N.J. 284, 294–96 (2004); *Cliett v. City of Ocean City*, No. CIV. 06-4368 (JBS), 2007 WL 2459446, at *2 (D.N.J. Aug. 24, 2007). Only thereafter, once six months have passed, may the claimant file suit. N.J. Stat. Ann. § 59:8-8. The deadline may be extended based on "extraordinary circumstances," but only if application is made within one year after accrual of the claim, which is long past. *See* N.J. Stat. Ann. § 59:8-9. The Notice is a jurisdictional prerequisite, and in its absence, the action will be dismissed with prejudice. *See Bonitsis v. N.J. Inst. Of Tech.*, 363 N.J. Super. 505, 516 (App. Div. 2003); *Ezzi v. DeLaurentis*, 172 N.J. Super. 592 (Law Div. 1980).

Pre-suit notice is a condition that the State may permissibly place upon its waiver of sovereign immunity. To the extent McKinnie has failed to comply with the NJTCA notice requirement, his state law tort claims against public entities and employees would be barred on this alternative basis.

## B.     Motion of defendant Miller

Defendant Gerald D. Miller, Esq., an attorney, moves separately for dismissal. I therefore separately consider the Amended Complaint's allegations against Miller, which are as follows. (AC at pp. 33–35)

The Amended Complaint alleges that Miller told McKinnie he was an "undisclosed owner" of a house at 269 Bergen Avenue, Jersey City, New Jersey. Miller allegedly stated that he could get McKinnie's house back, or if not, could at least recover amounts expended for work on the house, if McKinnie provided receipts or other proof showing the work done. According to the complaint, Miller took the case to federal court, but did not employ "any Discovery, Evidence, Person or say anything about" that case, the 2009 Action. Miller allegedly presented McKinnie with a release form and told him he would receive $20,000, but McKinnie never signed it. As for McKinnie's stolen vehicles, property and court order, Miller stated that "we will worry about that later."

One potential basis for federal jurisdiction is the presentation of a claim arising under federal law. *See* 28 U.S.C. § 1331. That claim, however, must be

"colorable"; an "insubstantial" claim is not sufficient to confer federal-question jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 & n. 10, 126 S. Ct. 1235, 1244 & n.10 (2006), Counts 1, 2, and 3 cite federal law: specifically, the equal protection and due process clauses of the U.S. Constitution, 42 U.S.C. § 1983, and disability discrimination.

No facts are pleaded to indicate that Miller could conceivably have committed a violation of these federal constitutional provisions and statutes. As a matter of law, he could not.

A constitutional or § 1983 claim requires state action, *i.e.*, action by or behalf of some governmental entity. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *W. v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941)). Miller is a private attorney, not a government actor. *See Singh v. Harrison*, 412 F. App'x 430 (3d Cir. 2011) (upholding dismissal of § 1983 claim because private attorney not state actor).[4] The due process and equal protection clauses, as well as § 1983, are protections against government action, not sources of claims between private parties.

---

[4] *See also Love v. Law Office of Roberts*, No. 11–4500, 2011 WL 4916196, at *2 (D.N.J. Oct.17, 2011) ("As a private attorney, Defendant Roberts is not a state actor for purposes of § 1983.") (citing *Polk Cnty. v. Dodson*, 454 U.S. 527, 535 (1981); *Steward v. Meeker*, 459 F.2d 669 (3d Cir.1972); *Thomas v. Howard*, 455 F.2d 228 (3d Cir.1972)); *Catanzaro v. Collins*, No. 09–0922, 2010 WL 1754765, at *8 (M.D. Pa. Apr. 27, 2010) ("Private attorneys and public defenders are generally not considered state actors for § 1983 purposes when acting in their capacities as attorneys.") (citing *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir.1999) (citing *Polk Cnty*, *supra*)), aff'd by 447 F. App'x 397 (3d Cir.2011) (per curiam).

As for disability discrimination,[5] the only fact pled is that Miller knew McKinnie had had a heart attack and a leg injury. The nature of any alleged actionable discrimination by Miller is unmentioned. (AC at p. 34)

Claims 1, 2, and 3 are so devoid of support that they fail to set forth a colorable basis for federal question jurisdiction and must be dismissed under Rule 12(b)(1). Even assuming they passed that jurisdictional threshold, they would be dismissed for failure to state a claim under Rule 12(b)(6).

Claims 4, 5, and 6 I will interpret as state-law claims of attorney malpractice. As to these, the basis for this court's subject matter jurisdiction must be diversity of citizenship. The relevant portion of the diversity statute provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a). *See also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting statute).

To be a "citizen" of a state is not merely to be a resident of that state, or to receive mail there. For purposes of diversity jurisdiction, citizenship is synonymous with domicile, and "the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *Vlandis v. Kline*, 412 U.S. 441, 454, 93 S. Ct. 2230 (1973). Factors relevant to domicile include "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." *Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir.1972) (internal quotation omitted). "Other factors to be considered may include location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290

---

[5] I will assume that the reference is to the Americans with Disabilities Act (ADA), which prohibits discrimination in certain kinds of employment, state and local government, public accommodations, commercial facilities, transportation, and telecommunications. *See* 42 U.S.C. § 1201 *et seq.*

(3d Cir. 2006). "The party asserting diversity jurisdiction [here, plaintiff McKinnie] bears the burden of proof." *Id.* at 286.

Neither party submits affidavits or other proofs as to jurisdiction. I must therefore consider this as a facial challenge to the Complaint. The Complaint does not allege that plaintiff and defendant are citizens of different states. I am disinclined to be lenient, because all of the facts pled in the Complaint seem to suggest otherwise, but I do not prejudge the matter.[6] Nor does the complaint allege an amount in controversy that exceeds $75,000.

I will therefore dismiss the claims against Miller for failure to plead federal subject matter jurisdiction. Because this could be a case of inartful pleading by a *pro se* defendant, however, this dismissal will be without prejudice to the filing of a Second Amended Complaint that alleges, *with specificity*, that plaintiff McKinney is a citizen of a state different from that of the defendants against whom he asserts diversity-based state law claims, and that the amount in controversy exceeds $75,000.

I also add that if I had jurisdiction, I would dismiss the allegations for failure to state a claim. *See Iqbal, supra; Twombly, supra.* What Miller supposedly did wrong, when he did it, or even what litigation is referred to, cannot be gleaned from the complaint. I could draw conclusions from the exhibits, but I would be guessing.

---

[6]   On the docket, plaintiff has listed a mailing address in Auburn, New York. That is not a substitute for an allegation of citizenship. Defendant Miller states that even if McKinney is a resident there, he is not domiciled there. Defendant Miller presents no affidavits or other proofs; he merely makes factual statements in his brief. I therefore disregard them, and consider this solely as a facial challenge to the complaint.

McKinnie sues, not just Miller, but a host of other defendants. "For over two hundred years, the [diversity jurisdiction] statute has been understood as requiring 'complete diversity between all plaintiffs and all defendants.'" *Lincoln Ben. Life. Co.*, 800 F.3d at 104. "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). As to common claims, diversity would require that McKinnie be a citizen of a different state from *all* defendants.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Amended Complaint filed by defendants Hudson County Prosecutor's Office, Erika Patterson, Michelle Field, Michelle Vicari, Priscila Pender, Miguel Torres, Hudson Vicinage of the State of New Jersey Judiciary, are GRANTED and the complaint is DISMISSED WITH PREJUDICE as against them. The motion to dismiss filed by defendant Gerald D. Miller is GRANTED and as to Miller, the Amended Complaint is DISMISSED WITHOUT PREJUDICE.

Dated March 22, 2016
Newark, New Jersey

_____
KEVIN MCNULTY
United States District Judge