UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DERECK MCKINNIE,** | Civ. No. 13-7290 (KM)(MAH) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **HUDSON COUNTY PROSECUTOR OFFICE et al.,** | |
| **Defendants.** | |

This Amended Complaint (ECF no. 31, cited as "AC"), filed by Dereck McKinnie, *pro se,* arises primarily, but not exclusively, from a family dispute over real property in Jersey City. The circumstances are described in detail in a prior opinion in this action which granted the motion of certain defendants to dismiss the Amended Complaint. (Opinion, ECF no. 48, cited as "Op.") Now before the court is the motion (ECF no. 62) of additional defendants (the "Jersey City Defendants") to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Having received no response to the motion, I issued an order to show cause. (ECF no. 64) In response, Mr. McKinnie filed a short statement to the effect that he opposed the motion, referring to prior papers that he had filed. (ECF no. 66) It was accompanied by a letter application to permit filing of this opposition out of time, which I will grant. (ECF no. 67) The Jersey City Defendants' motion to dismiss is therefore ripe for decision.

1

## I. BACKGROUND

### A. Prior Dismissals and This Motion

The Amended Complaint cites extensively to 100 pages of exhibits (ECF no. 1-1) that were attached to the original complaint, which was dismissed (ECF nos. 29, 30). The plaintiff continues to rely on them, and in the prior Opinion I reviewed them in order to get a sense of the allegations. (*See* Op. 2–8) That prior opinion, in which I dismissed the Amended Complaint as against certain defendants, is incorporated by reference, and familiarity with its contents is assumed. Suffice it to say that Mr. McKinnie, having already sued his relatives in state court and brought one prior federal action, now sues several groups of defendants, including Jersey City, its police department, and several police officers; County and municipal courts and court personnel; the Hudson County Prosecutor's Office (HCPO) and individual prosecutors; and two attorneys.

Prior orders and opinions of the court dismissed the Amended Complaint as against three groups of defendants: the court and court personnel at the County level; the HCPO and prosecutors; and the two attorneys.[1] (*See* Orders, ECF nos. 49, 56) Here are the defendants that remain active on the docket:

1. Jersey City Municipal Court Prosecutor Office
2. Linda Artiston, DO
3. Joe Taallabaus

---

[1] Specifically listed in those earlier orders of dismissal were the Hudson County Prosecutor's Office, Erika Patterson, Michelle Field, Michelle Vicari, Priscila Pender, Miguel Torres, and Hudson Vicinage of the State of New Jersey Judiciary (collectively referred to as the "Hudson Defendants"); Gerald D. Miller, Esq.; and Victor G. Sison, Esq. (ECF nos. 49, 56)

As to Mark Blaeiter, the summons was returned unexecuted, with the notation that there is no one of that name at the HCPO. (ECF no. 36) The clerk will be directed to close the file as to Blaeiter.

Also listed as a defendant is "Miller Myerson & Cobro Attorney," which has apparently never appeared. Miller, Meyerson & Corbo is the law firm of defendant Gerald D. Miller, Esq. I have already dismissed the Amended Complaint as against Mr. Miller himself, and no separate allegations are made against the firm as such. I will therefore order dismissal as to the firm as well.

2

4. Steven Hummell
5. City of Jersey City
6. Jersey City Police Department
7. P.O. Evan
8. P.O. Green
9. P.O. Sgt. Sarno
10. P.O. Butler
11. Sgt. George Rolando
12. Det. William Jackson

Those twelve defendants, all associated with the City of Jersey City and represented by Corporation Counsel, I will refer to as the "Jersey City Defendants." They are the movants on this motion to dismiss the Amended Complaint. (ECF no. 62) As to these defendants, I construe the Amended Complaint as primarily asserting a federal constitutional claim under 42 U.S.C. § 1983.

## II. STANDARD ON MOTION TO DISMISS

The defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011).

At a minimum, a complaint must contain

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief

FED. R. CIV. P. 8(a).

From the seminal modern cases of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Third Circuit has extracted a three-step process for reviewing a complaint:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal*, 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The complaint's allegations must be factual, not conclusory, and they must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

## III. DISCUSSION

As related in more detail in my earlier Opinion, Mr. McKinnie's grievances essentially arise from two sources.

First, he considers himself the true owner of a house which is titled to and occupied by his mother, Rethel McKinnie, and his brother, Byron McKinnie.[2] Rethel McKinnie obtained a restraining order was entered against Mr. McKinnie. That order was vacated on appeal. *R.M. v. D.M.*, No. A-5656-07T3, 2009 WL 4981203 (Dec. 24, 2009). In Mr. McKinnie's view, the Appellate Division's order was tantamount to a declaration that he owns or is entitled to occupy the house, but the police, the prosecutors, and the courts have failed to recognize this. That order vacating the restraining order is seemingly the "court order" to which the Amended Complaint repeatedly refers.

---

[2] Herein, "McKinnie" or "Mr. McKinnie" refer to the plaintiff. Rethel McKinnie and Byron McKinnie will always be identified as such.

4

Second, Mr. McKinnie refers to three 30-year-old cars that once were garaged at his mother's house. He believes they have been stolen. Again, he faults the authorities for their failure to prosecute anyone for this crime.

### A.     The Police Officer Defendants

#### 1.     Allegations against the Police Officers

The allegations against the police officer defendants primarily arise from an incident on January 8, 2010. The Amended Complaint alleges that Police Officer Evan, apparently joined by Police Officer Green, confronted Mr. McKinnie at 269 Bergen Avenue, Jersey City. That is the address of the home titled to and occupied by McKinnie's mother and brother, Rethel and Byron McKinnie. Officer Evan spoke to Rethel McKinnie, restrained McKinnie, and told him he could not enter the house. McKinnie told the officer he had had a heart attack and that his leg hurt. The officers gave McKinnie a ride to 181 Pearsall Avenue in Jersey City (apparently his home at the time) and let him go. (AC pp. 5–7)

McKinnie complained to Sgt. Sarno about the incident. Sarno allegedly did not "enforce the court order" or otherwise do his job correctly. (AC at pp. 9–10)

McKinnie complained to Sgt. Rolando, who allegedly said that Rethel and Byron McKinnie did not have to let him into the house, because the house is in their name. (AC at pp. 13–14)

Det. Jackson met with Rolando, and also told McKinnie to fill out the citizen complaint form that Rolando brought out. He also conducted an interview with McKinnie. (AC at 15–16)

There are additional allegations of official unresponsiveness to alleged auto theft. Officer Butler failed to enter McKinnie's complaints about three stolen vehicles into the New Jersey DMV computer. It seems that he did check the garage at 269 Bergen Avenue to see if the cars were there. The complaint also refers to police reports, or a lack of police reports. (AC at pp. 11–12)

Attached to the original complaint are copies of titles for three automobiles: a 1977 Mercedes Benz, a 1985 Mercedes Benz, and a 1985

5

Chevrolet. (ECF no. 1-1 at 76–78) Also attached are Jersey City police reports and handwritten notes stating that McKinnie said he last saw these 30-year-old cars in 2010. The alleged thieves are not identified. (ECF no. 1-1 at 72–75, 79–82) Municipal court documents, relating to claims and cross-claims by McKinnie and his family members, possibly regarding the cars, are also attached. (ECF no. 1-1 at 83–90)

A civilian complaint form, filed with the police on October 19, 2012, complains that they are not enforcing the law and have not put the vehicle on the "DMV theft sheet." A handwritten note giving more details is attached. (ECF no. 1-1 at 97) A letter from Det. William Jackson, dated January 17, 2013, states that the complaint is being investigated and requests an interview with McKinnie. (ECF no. 1-1 at 100)

### 2. Statute of limitations

The claims against the police officers arise primarily from the incident outside the house of McKinney's mother at 269 Bergen Avenue on January 8, 2010, and the immediate aftermath. The officers, according to the Amended Complaint, restrained him, prevented him from entering the house, and, when he complained of his medical condition, gave him a ride home. Their superiors did not respond to McKinney's complaints that the officers on the scene refused to "enforce the court order."[3]

The claims arising from this incident are barred by the statute of limitations. Section 1983 claims are subject to New Jersey's two-year personal injury tort statute of limitations. N.J. Stat. Ann. § 2A:14-2(a).[4] *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (per curiam) (citing *Dique v. N.J.*

---

[3] As noted above, this is an apparent reference to the Appellate Division's order vacating the restraining order against McKinnie, which had been entered in December 2009. That order did not, however, entitle McKinnie to occupancy or ownership of the house.

[4] I interpret these as claims under 42 U.S.C. § 1983. Even if viewed as state tort claims, however, they would be subject to the same two-year statute of limitations. *See* N.J. Stat. Ann. § 2A:14-2(a) (two-year tort statute of limitations); N.J. Stat. Ann. § 59:8-8b (tort claim against public entity or employee must be brought within two years of accrual).

6

*State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). Although the statute of limitations is an affirmative defense, a dismissal is permissible where the action's untimeliness is clear, based on the complaint and items properly considered on a motion to dismiss. *See Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017).

These claims against the police officer defendants relate to the confrontation at the Jersey City house and its immediate aftermath, on or about January 8, 2010. This action was filed on November 22, 2013, nearly three years later. The claims arising from this incident are therefore barred by the two-year statute of limitations.

The remaining allegations, concerning police unresponsiveness to McKinnie's claim of auto theft, cannot all be dated specifically. They may extend into the limitations period. I therefore discuss alternative grounds for dismissal.

### 3. Failure to state a claim/Qualified immunity

The claims against the police officer defendants are also barred by qualified immunity, to the extent they state a claim at all. "[Q]ualified immunity shields government officials from civil liability as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 564 U.S. 535, 546 (2012); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity entails a two-step analysis: the first step asks whether "the official's conduct violated a constitutional right" at all. *McGreevy*, 413 F.3d at 364 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second requires an analysis of whether "the right that the defendant's conduct

7

allegedly violates was a clearly established one, about which a reasonable person would have known." *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000).

By his own account, McKinnie reported only that three 30-year-old cars, which he had not seen since 2010, were missing from his mother's garage. He did not know who had taken them or what had become of them. Officer Butler visited the scene. Seemingly there was state-court litigation among the family members involving the cars, although the outcome is unclear. When McKinnie complained, Det. Jackson followed up, at least to some extent. *See* Section III.A.1, *supra*.

These facts present a quintessential police judgment call about whether to pursue an investigation. The police could reasonably have concluded that, if he left the cars at his mother's property, McKinnie had abandoned them. Alternatively, if the cars were stolen, there were no leads. Civil litigation apparently made no headway in establishing McKinnie's rights, if any, to the cars.

There is no apparent constitutional violation here, and certainly no violation so clear as to overcome the officers' qualified immunity.[5]

The Amended Complaint is dismissed as against the police officer defendants.

### B. The Prosecutors in the Municipal Court

The motion to dismiss is also brought on behalf of "Jersey City Municipal Court Prosecutor Office" and three prosecutors: Linda Ariston, Joe Taalabaus, and Steven Hummell.

The complaint seems to allege that these three prosecutors appeared in Jersey City Municipal Court in connection with McKinnie's allegations that

---

5    Qualified immunity might also apply to the officers' conduct on January 8, 2010, if such claims were not time-barred. They were told by Rethel McKinnie that there was a restraining order in effect (although it had been vacated shortly before). In any event, they rightly concluded that she had the right to exclude McKinnie from the house, but that McKinnie did not accept that. Under the circumstances, they seem to have made a reasonable judgment about the amount of restraint required, and they responded humanely to McKinnie's medical complaints by giving him a ride home.

8

three of his cars were stolen. He names them as Linda Ariston, Joe Taalabaus, and Steven Hummell. The nature of such appearances is not stated. The complaint seems to be that they allegedly failed to bring charges stemming from "violation of court order" or against the unknown person who stole the three cars. (AC at pp. 17–24)

There is also a civilian complaint form filed with the Hudson County Prosecutor's Office on November 15, 2012, for "violation of court order." (ECF no. 1-1 at 92) This, too, may stem from McKinnie's belief that the Appellate Division ordered him restored to ownership or occupancy of the Jersey City house. (ECF no. 1-1 at 94)

A prosecutor is immune for all acts that are "intimately associated with the judicial process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see also Kulwicki v. Dawson*, 969 F.2d 1454, 1463–64 (3d Cir. 1992) (holding that a prosecutor was entitled to absolute immunity even though he allegedly directed a police officer to file baseless charges against the prosecutor's political rival); *see also Schaeffer v. Wilson*, 240 F. App'x 974, 975 (3d Cir. 2007) ("The decision to initiate a prosecution is at the core of a prosecutor's judicial role. . . . And we have found no authority creating a mandatory duty upon [a police officer and district attorney] to investigate and pursue the prosecution of [others].") (citing *Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 382 (2d Cir. 1973)). Even where probable cause is present, a prosecutor's decision to decline criminal prosecution is shielded by absolute immunity. *See Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) ("Sanders' claims against prosecutors . . . necessarily fail because prosecutors enjoy absolute immunity for the failure to adequately investigate a case and for the decision to initiate, or decline to initiate, a prosecution.") (citing *Kulwicki*, 969 F.3d at 1463)).

The Amended Complaint, read liberally, asserts that these prosecutors exercised their functions of appearing in court and deciding whether to bring

criminal charges. As to these core functions, they enjoy absolute immunity from suit.

In the alternative, the Amended Complaint simply fails to state a claim against these defendants with the specificity required by *Twombly* and *Iqbal*, *supra*. At best, it alleges that these prosecutors appeared in municipal court in some unspecified fashion; that they declined to bring criminal charges against a car thief whose identity was unknown; and that they did not bring charges based on the plaintiff's family members excluding him from a property to which they held the deed, a matter that was already the subject of civil litigation. These allegations do not make out a claim of any kind.

The Amended Complaint is therefore dismissed as against these four defendants.

### C. The City of Jersey City

Finally, the motion to dismiss is brought on behalf of the City of Jersey City itself.[6]

First, I have dismissed all claims against City employees. It follows that the City cannot be derivatively liable for the same claims. For example, claims inadequately alleged or barred by the statute of limitations as to police officers would likewise be barred as against their employer, the City.

Second, a municipality's liability under Section 1983 "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 2035–36 (1978).

---

6     The Jersey City Police Department, named as a defendant, is an arm of city government, not an independent entity which may sue and be sued. *See Mitchell v. City of Jersey City*, No. 15-CV-6907 (KM), 2016 WL 1381379, at *1 n.1 (D.N.J. Apr. 7, 2016); *McGovern v. Jersey City*, No. 98-CV-5186 2006 WL 42236, at *7 n.4 (D.N.J. Jan. 6, 2006) For allegations against the Police Department, then, the proper defendant is the City itself. The Amended Complaint will be dismissed as against the Jersey City Police Department.

10

For example, a plaintiff must allege an unconstitutional pattern or practice, or inadequate training of employees. The Amended Complaint alleges nothing specific about the City's involvement, beyond the fact that it employs some of the individual defendants.

As to the City, too, the motion to dismiss the Amended Complaint is granted.[7]

### D. Counterclaim and Cross-Claims

Defendant Victor G. Sison, Esq., asserts a counterclaim against Mr. McKinnie for bringing a frivolous action, citing N.J. Stat. Ann. 2A:15-59. (ECF no. 12 at 2) That statute does not apply in federal court, and Mr. Sison does not seem to have pursued the Counterclaim in any event. The Counterclaim is dismissed.

---

[7] As to state-law torts, I note two alternative grounds for dismissal.

First, I have dismissed all federal claims and will not exercise my discretion to assert pendent jurisdiction. See 18 U.S.C. § 1367. The federal claims are entirely insubstantial, and the action has not even progressed to the discovery stage. There is no benefit to a federal court's hearing whatever state-law claims may remain.

Second, there is no indication that McKinnie has filed the requisite notice of claim pursuant to the New Jersey Tort Claims Act (NJTCA). This is particularly significant in that he has attached a hundred pages of pleadings and other exhibits. Assuming the notice was not filed, no state law tort claims can be sustained against the City or public employees.

Under the NJTCA, "[n]o action shall be brought against a public entity or public employee under [the NJTCA] unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J. Stat. Ann. § 59:8-3. That "procedure" requires that a notice of claim be filed with the public entity, generally within 90 days after the accrual of the cause of action. N.J. Stat. Ann. § 59:8-8. See Velez v. City of Jersey City, 180 N.J. 284, 294–96 (2004); Cliett v. City of Ocean City, No. CIV. 06-4368 (JBS), 2007 WL 2459446, at *2 (D.N.J. Aug. 24, 2007). Only thereafter, once six months have passed, may the claimant file suit. N.J. Stat. Ann. § 59:8-8. The deadline may be extended based on "extraordinary circumstances," but only if application is made within one year after accrual of the claim, which is long past. See N.J. Stat. Ann. § 59:8-9. The Notice is a jurisdictional prerequisite, and in its absence, the action will be dismissed with prejudice. See Bonitsis v. N.J. Inst. Of Tech., 363 N.J. Super. 505, 516 (App. Div. 2003); Ezzi v. DeLaurentis, 172 N.J. Super. 592 (Law Div. 1980).

11

In their original Answer (ECF no. 27 at 3), the Jersey City Defendants asserted crossclaims for contribution and indemnification. These are dismissed as moot in light of the dismissal of all of the plaintiff's claims for damages.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Amended Complaint filed by defendants Jersey City Municipal Court Prosecutor Office, Linda Artiston, DO, Joe Taallabaus, Steven Hummell, City of Jersey City, Jersey City Police Department, P.O. Evan, P.O. Green, P.O. Sgt. Sarno, P.O. Butler, Sgt. George Rolando, and Det. William Jackson is GRANTED.

This dismissal of the Amended Complaint is, as to these particular defendants, the second order of dismissal, and the plaintiff has not responded substantively to this motion to dismiss. Finding that a further opportunity to amend would be futile, I enter these dismissals with prejudice.

Dated: October 3, 2017

_____
KEVIN MCNULTY
United States District Judge